ALTENBERND, Judge.
Deonno Miller appeals an order denying his motion to correct illegal sentences. Because the records attached to the order do not conclusively refute Mr. Miller’s postconviction claim that the trial court imposed illegal sentences on the revocation of his youthful offender probation, we reverse and remand.
In January 2007, Deonno Miller was sentenced to four years’ imprisonment followed by two years’ probation as a youthful offender on several felony offenses in *889 each of three separate cases. He was sentenced to time served on two misdemeanor offenses. Our record is scant, but it appears that the offenses for which Mr. Miller was sentenced as a youthful offender occurred sometime in 2004 and 2005, clearly before July 1, 2006.[1]
In 2009, while serving probation, Mr. Miller committed new substantive offenses — two counts of possession of cocaine and two counts of sale, manufacture, or delivery of cocaine. Mr. Miller entered a plea on the new substantive offenses, and he was sentenced as an adult on those offenses to four concurrent terms of ten years’ imprisonment on the four counts.[2] Mr. Miller also entered a written plea admitting that he violated the terms of his probation in the three prior youthful offender cases and acknowledging that he understood that he would be sentenced to ten years’ imprisonment on the revocation of probation. He was sentenced to concurrent terms of ten years’ imprisonment on each of the felony convictions in the three prior cases. Written judgments and sentences were rendered in all of the cases on August 21, 2009.
Mr. Miller delivered to his correctional institution a sworn motion to correct sentencing error on August 2, 2010, and he delivered to his correctional institution a sworn addendum to the motion on November 1, 2010, citing Florida Rule of Criminal Procedure 3.800(b) as the authority for the filings. He asserted that he successfully completed “boot camp” on his youthful offender sentences and that under the law in effect when he committed his prior offenses, he could be sentenced to no more than 364 days on the revocation of probation. He argued that the sentences imposed on the revocation of probation in the three youthful offender cases violated the constitutional prohibition against ex post facto laws.
Mr. Miller’s sworn claims could have been considered pursuant to rule 3.850, but the court elected to consider them pursuant to rule 3.800(a) and summarily denied relief. It concluded as a matter of law that certain provisions of the youthful offender statute authorized the imposition of the ten-year sentences on the revocation of Mr. Miller’s youthful offender probation. In reaching this conclusion, the court incorrectly relied upon the version of a statutory provision that was applicable at the time Mr. Miller was originally sentenced as a youthful offender, rather than the version of the provision in effect at the time Mr. Miller committed his offenses. Compare § 958.045(5)(c), Fla. Stat. (2007) (authorizing the court to sentence a youthful offender to “any sentence that it might have originally imposed” if the offender violates a modified sentence of probation that was imposed as a consequence of the offender’s satisfactory completion of a basic training program run by the Department of Corrections), with § 958.045(5)(c), Fla. Stat. (2004, 2005) (authorizing the court to sentence such an offender to “any sentence that it might have originally imposed as a condition of probation”) (emphasis added)).
*890 Significantly, in applying the incorrect version of the statutory provision, the court stopped short of addressing whether the revocation proceeding arose from the violation of probationary terms that had been imposed following Mr. Miller’s satisfactory performance in a DOC-run basic training program (commonly referred to as “boot camp”).[3] See § 958.045(5)(c), Fla. Stat. (2004, 2005). This determination was critical to Mr. Miller’s claim. If Mr. Miller violated a probationary sentence that was imposed as a consequence of his satisfactory completion of a DOC-run boot camp on convictions for offenses that occurred prior to July 1, 2006, the sentences imposed on the revocation of his youthful offender probation indeed violated the constitutional prohibition against ex post facto laws. See Morrison v. State, 978 So.2d 284, 285 (Fla. 4th DCA 2008); see also Cutler v. State, 927 So.2d 249, 250 (Fla. 2d DCA 2006); Blaxton v. State, 868 So.2d 620, 621 (Fla. 2d DCA 2004); Lee v. State, 884 So.2d 460, 462 (Fla. 4th DCA 2004) (providing that an offender who completes a county-operated boot camp would not be entitled to section 958.045(5)(c) sentencing because “no provisions in the Youthful Offender Act requir[e] application of rules governing department boot camp facilities to the county-run programs”). Under the youthful offender provisions in effect in 2004 and 2005, a violation of a probationary sentence that was imposed as a consequence of an offender’s satisfactory completion of a DOC-run boot camp could result in a sentence of no longer than 364 days’ incarceration in specified facilities. See §§ 958.045(5)(e), 958.04(2)(b), Fla. Stat. (2004, 2005); Cutler, 927 So.2d at 250; Morrison, 978 So.2d at 285.
The items attached to the court’s summary denial order do not conclusively refute Mr. Miller’s claim that under the youthful offender law in effect when he committed his prior offenses he could be sentenced to no more than 364 days on the revocation of probation. Because Mr. Miller filed a sworn motion that is timely under rule 3.850, we reverse and remand for the court to address the motion as if filed under that rule.
Reversed and remanded.
VILLANTI and MORRIS, JJ., Concur.

. Our record does not reveal the precise date of Mr. Miller's offenses. Throughout this opinion we have deduced the year in which the offenses were committed. For purposes of this opinion, the offense dates we mention are not intended to be conclusive.

. Although not challenged in this appeal, it is not entirely clear that Mr. Miller’s sentences on the third-degree felony possession convictions are legal. Perhaps his Criminal Punishment Code scoresheet supported the imposition of ten years' incarceration on each of these, but it is not contained in our record. Again, our record simply fails to reveal this information.

. The circuit court’s case progress docket suggests that Mr. Miller's sentences might have been modified in September 2008, but our record does not reveal whether they were modified as a result of his satisfactory performance in a DOC-run boot camp.